IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

ANTWYN GIBBS,

       Petitioner,

v.                              Case No. 2:21-cv-00577

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Respondent's Motion to Dismiss and for Summary Judgment (ECF No. 27). This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition in accordance with 28 U.S.C. § 636(b)(1)(B).

## I. RELEVANT PROCEDURAL HISTORY

### A. Petitioner's criminal proceedings, Case No. 15-F-64.

In May of 2015, Petitioner was indicted in the Circuit Court of Fayette County, along with four co-defendants—Kevin Goodman, Jr ("Kevin").; Radee Hill ("Hill"); Kentrell Goodman ("Kentrell"); and Rashod Wicker ("Wicker")—on charges of first-degree robbery, entry of a dwelling, grand larceny, and conspiracy. *State v. Gibbs,* 797 S.E.2d 623, 626 (W. Va. 2017) ("*Gibbs I*"). Throughout his circuit court criminal proceedings, Petitioner was represented by court-appointed counsel, Jack Thompson.

In a joint trial conducted in September of 2015, Petitioner, Kevin, and Hill were convicted of first-degree robbery, entry of a dwelling, and conspiracy. The grand larceny

charge was dismissed as to each of them. *Id.* at 629.[1] Petitioner was sentenced to one to five years of incarceration for conspiracy, which was enhanced to two to five years following his recidivist conviction; one to ten years of incarceration for entry of a dwelling; and fifty years of incarceration for first degree robbery. *Id.* Petitioner's sentences were ordered to be served consecutively, for an aggregate sentence of 53-65 years in prison. *Id.* at 629-30. Kevin and Hill received similar sentences. *Id.*

### B.    Direct appeal, Case No. 16-0044.

Petitioner's appeal was consolidated with co-defendant Kevin's appeal. *Id.* at 626. On appeal, by new appointed counsel, Steve Mancini, Petitioner challenged (1) the sufficiency of the evidence to support his robbery conviction and (2) the denial of his motion to sever his trial without addressing the issue of sharing peremptory challenges. *Id.*

First, Petitioner argued that his indictment for robbery should have included the words "bodily fear," and that the State's evidence would not have been sufficient to convict him given the victim's testimony that he was not afraid during the robbery. *Id.* at 633. The Supreme Court of Appeals of West Virginia (the "SCAWV") acknowledged that West Virginia Code § 62-9-6, which prescribes the language for a robbery indictment, does include the words "bodily fear"; however, the Court reasoned that the indictment in the instant case was sufficient because "bodily fear" is not an element of first degree robbery under West Virginia Code § 61-2-12(a). *Id.* at 633-35. The Court further determined that the State's evidence was sufficient to prove first degree robbery as defined in § 61-2-

---

1  Kentrell and Wicker pled guilty to first-degree robbery, and the State dismissed the other charges against them. Both testified for the State in the other defendants' joint trial. The available record does not indicate what sentences Kentrell and Wicker received.

12(a). *Id.* at 635.

Concerning the shared peremptory challenges, the SCAWV relied on West Virginia

Code § 62-3-8 (2014), which provides, in part:

> Persons indicted and tried jointly, for a felony, shall be allowed to strike from the panel of jurors not more than six thereof, and only such as they all agree upon shall be stricken therefrom; and if they cannot agree upon the names to be so stricken off, the prosecuting attorney shall strike therefrom a sufficient number of names to reduce the panel to twelve.

*Id.* at 630.    However, the Court further noted that Rule 24 of the West Virginia Rules of

Criminal Procedure allows the trial court, in its discretion, to grant additional challenges

in joint trials, but only if such a motion is filed at least one week prior to the first scheduled

trial date.    *Id.* (citing Rule 24(b)(2)).    The SCAWV noted that none of the three

defendants filed a pretrial motion seeking additional peremptory challenges.    *Id.* at 630-

31.    Accordingly, the Court ruled:

> When an accused, who is being tried jointly for a felony offense with co-defendants, seeks to avoid the sharing of six peremptory challenges, as provided under West Virginia Code § 62-3-8 (2014), he or she must file a motion expressly requesting additional peremptory challenges in accordance with Rule 24(b)(2) of the West Virginia Rules of Criminal Procedure.    The trial court's ruling on a Rule 24(b)(2) motion shall be at its sole discretion.

*Id.* at Syl. Pt. 1.    The Court further found that the trial court did not abuse its discretion

when it denied the motion to sever because the co-defendants' positions were "not

inherently inconsistent" such as would prejudice their defense and that judicial economy

favored the joint trial.    *Id.* at 631.    Accordingly, the Court affirmed Petitioner's

conviction on March 9, 2017.    *Id.* at 638.

3

### C.    First habeas corpus petition, Case No. 17-C-138.

On March 29, 2017, Petitioner filed his first petition for writ of habeas corpus in the Circuit Court of Fayette County (Case No. 17-C-138).   That petition raised the following grounds for relief:   (1) ineffective assistance of counsel regarding trial counsel's failure to object to the number of peremptory challenges; (2) prosecutorial abuse of discretion regarding trying the co-defendants in a single trial; (3) ineffective assistance of counsel regarding failure to raise the issues of illegal search and seizure, "fruits of the poisonous tree" and to "test the sequence of events;" (4) prosecutorial or judicial abuse of discretion regarding failure to timely notice that each defendant would only have two peremptory challenges; (5) ineffective assistance of counsel regarding failure to make timely motion for additional peremptory strikes; (6) ineffective assistance of counsel regarding failure to request a jury instruction on "bodily fear;" (7) ineffective assistance of counsel regarding failure to challenge the indictment for not including the words "bodily fear;" (8) ineffective assistance of appellate counsel regarding failure to raise ineffective assistance of trial counsel in the direct appeal; (9) ex post facto violation in the SCAWV's application of Rule 14(b); and (10) violation of double jeopardy when Petitioner was charged with both grand larceny and robbery.   (ECF No. 27, Ex. 2).

On July 26, 2017, Petitioner filed an amended petition alleging the following grounds for relief:   (1) prosecutorial abuse of discretion for presenting only one witness to the Grand Jury; (2) ineffective assistance of counsel for failing to file a motion for additional peremptory challenges; (3) abuse of discretion and clear error for the trial court to not, *sua sponte*, grant Petitioner additional peremptory challenges; (4) abuse of discretion and clear error for the trial court to not allow the jury to take notes; (5)

4

ineffective assistance of counsel for failing to object when the jury was not allowed to take notes; (6) ineffective assistance of counsel for failing to challenge the search warrants or the chain of custody of evidence recovered in South Carolina; (7) ex post facto creation and application of a Syllabus Point in Petitioner's direct appeal; (8) ineffective assistance of counsel in failing to object to illegal evidence; (9) ineffective assistance of counsel in failing to object to the jury instruction for first degree robbery; and (10) insufficiency of the indictment for entry of a dwelling with intent to commit a felony.   (ECF No. 27, Ex. 3).   The circuit court denied the petition and amended petition, without a hearing, in a comprehensive 61-page order.   (*Id.*, Ex. 4).   Petitioner did not seek an appeal from the denial of his circuit court habeas petitions.

### D.      Rule 35(b) motion in Case No. 15-F-64.

In August of 2017, Petitioner filed a motion for reduction of sentence under Rule 35(b) of the West Virginia Rules of Criminal Procedure, arguing that two of his four co-defendants received shorter sentences, but acknowledging that the two defendants who received shorter sentences pled guilty to one count of first-degree robbery and thus had one sentence, not three.   *State v. Gibbs*, No. 17-0854, 2018 WL 4944192, at *1 (W. Va. Supreme Court, Oct. 12, 2018) (memorandum decision) ("*Gibbs II*").   The circuit court denied the motion on September 6, 2017, finding that the sentences imposed in the cases were appropriate.   *Id*.

### E.      Appeal of Denial of Rule 35(b) Motion, Case No. 17-0854.

Petitioner appealed the denial of this Rule 35(b) motion, arguing that the circuit court:   (1) failed to make appropriate findings of fact and conclusions of law; (2) failed to consider Petitioner's accomplishments and other facts; and (3) failed to hold a hearing on

the motion.  *Id*. at *2.   The SCAWV affirmed the lower court's decision.   *Id*. at *3.   The mandate was entered on November 14, 2018.   (EF No. 27, Ex. 5).

### F.    Second habeas corpus petition, Case No. 17-C-329.

On November 14, 2017, Petitioner filed a second petition for writ of habeas corpus in the Circuit Court of Fayette County.   That petition alleged the following grounds for relief:   (1) denial of right to confront a witness who was permitted to testify regarding cell phone data without authentication; (2) violation of due process when that same witness was   allowed to testify as a lay witness (and not as a qualified expert); (3) illegal search and seizure by South Carolina police; (4) ineffective assistance of counsel (failure to object to illegal search and seizure; failure to object to cell phone records testimony; failure to object to lay witness testimony regarding cell phone data; failure to object to confrontation violation regarding cell phone records; failure to investigate alibi; failure to investigate corroborating witness; failure to object to in-court identification; and failure to investigate and raise substantive grounds on appeal; (5) actual innocence; and (6) cumulative error.   (ECF No. 27, Ex. 6).

Petitioner was appointed counsel, Evan J. Dove, who filed an amended petition on January 14, 2019, alleging the following grounds for relief:   (1) constitutional errors in evidentiary rulings (illegally obtained evidence, admission of "expert evidence" through a lay witness, and admission of evidence without establishing the chain of custody); (2) ineffective assistance of trial counsel (failure to object to illegally obtained evidence, failure to object to indictment, failure to object to lay witness testimony to matters that required an expert, failure to investigate alibi, failure to investigate corroborating witness, and failure to object to in-court identification); (3) ineffective assistance of appellate

counsel; (4) refusal of trial counsel to subpoena alibi witness; (5) defects in the indictment; (6) insufficient jury instructions; (7) sufficiency of the evidence; (8) violation of due process in extradition from South Carolina to West Virginia; (9) cumulative error; and (10) actual innocence. (*Id.*, Ex. 7).

An omnibus hearing was held on August 28, 2019. (ECF No. 27, Ex. 8). At the omnibus hearing, Petitioner raised the additional issues of (1) lack of jurisdiction; (2) newly discovered evidence; and (3) "additional jury instructions." (*Id.* at 14-15). The circuit court denied the petition in a detailed 81-page order, making specific findings of fact and conclusions of law. (*Id.*, Ex. 9).

### G.   Appeal from denial of second habeas petition, Case No. 20-0478.

Petitioner appealed the denial of his second habeas corpus petition, asserting that the circuit court abused its discretion in finding: (1) that Petitioner's claims stemming from his initial arrest and extradition were not appropriate for habeas review; (2) that Petitioner was not entitled to habeas relief on his claim regarding the admission of illegally obtained evidence at trial; and (3) that the magnitude of cumulative error at trial did not affect the fairness of the trial. (*Id.*, Ex. 10). The State responded, refuting each of Petitioner's claims. (*Id.*, Ex. 11). On October 13, 2021, the SCAWV affirmed the denial of Petitioner's second habeas corpus petition. (*Id.*, Ex. 12); *see also Gibbs v. Ames*, No. 20-0478, 2021 WL 4936636, at *7 (W. Va. Supreme Court, Oct. 13, 2021) (memorandum decision) ("*Gibbs III*").

With respect to the first issue, the SCAWV found that, pursuant to *State v. Flint*, 301 S.E.2d 765 (1983) and *State v. Moss*, 376 S.E.2d 569 (1988), "regardless of whether there are irregularities in the extradition of an individual from an asylum state to West

Virginia, once the individual has been brought to West Virginia, extradition proceedings in the asylum state may not be challenged in West Virginia." *Id*. at *9. Accordingly, the Court ruled that the circuit court did not abuse its discretion in declining to grant relief on the issues surrounding Petitioner's arrest and extradition. *Id*.

As to the second issue, the SCAWV held that, even if the trial court erred in allowing certain evidence, such error was harmless beyond a reasonable doubt because co-defendants Kentrell and Wicker testified to Petitioner's involvement in the crime, their testimony was corroborated by physical evidence not challenged by Petitioner, Petitioner had an opportunity to present his own testimony at trial, and the jury had the opportunity to weigh the credibility of all the witnesses. *Id*. at *9-10. Moreover, even if the allegedly illegal evidence had been excluded, Petitioner would have been in the same position as Hill, who the jury convicted on lesser evidence. *Id*. at *10. Thus, the Court concluded that the lower court did not abuse its discretion in denying Petitioner relief on the ground of illegally obtained evidence. *Id*. at *10.

Finally, the SCAWV held that Petitioner's cumulative error claim was "at best, 'skeletal'" and did not establish that he was denied a fair trial. *Id*. at 11. Because Petitioner failed to properly preserve that claim, the Court declined to consider it on the merits. *Id*. The mandate was entered on November 15, 2021. (*Id*., Ex. 13).

## H. Instant section 2254 petition and related briefing.

Petitioner filed the instant Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody on October 27, 2021. (ECF No. 1.) In his petition, Petitioner alleges (1) "Illegal Extradition West Virginia Code 5-1-7," (2) illegal evidence, (3) "Issues Raised As Co-defendant Kevin goodman jr [sic] [and] Radee Hill Ineffective

8

of [sic] Counsel," and (4) "Lack of Personal Jurisdiction 28 USC 1332."   (ECF No. 1 at 5-10.)   The undersigned reframed these issues as:   (1) "Petitioner's allegedly improper extradition from South Carolina . . . to West Virginia;" (2) lack of jurisdiction of the West Virginia trial court; (3) improper conviction "based upon the admission of illegally obtained evidence used to corroborate the testimony of two co-defendants who had pled guilty before [Petitioner's] trial'"; and (4) "[denial of] a fair trial because Petitioner was tried together with two other co-defendants."   (ECF No. 19 at 1-2.)

On July 20, 2022, Respondent filed the instant Motion to Dismiss and for Summary Judgment, with supporting exhibits (ECF No. 27) and a Memorandum of Law in support thereof (ECF No. 28).   On August 5, 2022, and August 18, 2022, Petitioner filed two documents titled as "objections," which the undersigned construes as his response to Respondent's motion.   (ECF Nos. 29 and 30).   Respondent did not file a reply brief.   This matter is fully briefed and ripe for adjudication.

## II.    STANDARD OF REVIEW

### A.    Standards for relief under 28 U.S.C. § 2254(d).

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.   The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.   *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Where a claim has been summarily refused, the undersigned must simply determine whether that decision was legally and factually reasonable under clearly established federal law.   *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s]

[its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'").

### B.    Exhaustion requirement under 28 U.S.C. § 2254(b).

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.   28 U.S.C. §§ 2254(b)(1)(A), (b)(3).   "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (Exhaustion requires the habeas petitioner to "fairly present the substance of his claim to the state's highest court.")

In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV.   *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D.W. Va. 1986).   A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies.   *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also,*

11

*Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, Petitioner must show that the claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding. *See Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The claims in both courts must "fairly present" the "substance" of the claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

**C.    Procedural default doctrine.**

The doctrine of procedural default bars litigation of claims in a federal habeas corpus petition that were not adjudicated on their merits in state court where such claims are barred from further litigation in state court by operation of a state procedural rule. *See Boothe v. Ballard*, No. 2:14-cv-25165, 2016 WL 1275054 *46 (S.D. W.Va. Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir., Nov. 18, 2016). "The procedural default doctrine operates to bar a federal habeas claim 'only if the rule of procedure . . . is determined to be an adequate and independent state-law ground for decision.'" *Id.* at *47 (quoting *Thomas v. Davis*, 192 F.3d 445, 450 (4th Cir. 1999); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.").

However, "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *cf. Sharpe v. Bell*,

593 F.3d 372, 377 (4th Cir. 2010) ("Although the doctrine of procedural default limits federal habeas review of state convictions, it does not provide an absolute bar.").   In fact, the procedural default doctrine provides for two exceptions where a petitioner can show: (1) cause for the default and prejudice therefrom; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.   *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Richmond v. Polk*, 375 F.3d 309, 323 (4th Cir. 2004).

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the procedural rule.   *Maples, supra*, 565 U.S. at 280.   The Supreme Court has not "identified with precision exactly what constitutes 'cause' to excuse procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).   Generally, ineffective assistance of habeas counsel is not considered an external factor that would excuse the failure to exhaust a claim for habeas corpus relief.   *See Maples*, 565 U.S. at 280 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'") (citing *Coleman*, 501 U.S. at 753); *but see Martinez*, 566 U.S. at 9-10 (finding "cause" based upon counsel's failure to raise claims of ineffective assistance of trial counsel in initial habeas proceeding).

*Boothe, supra*, summarized the procedural default doctrine as follows:

> The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).   In addition, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts."   *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1).   "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-

law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted).   "The procedural default doctrine . . . appl[ies] . . . whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted).

2016 WL 1275054 at *46.

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991).   Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

### III.    SUMMARY OF TRIAL AND OMNIBUS HEARING EVIDENCE

### A.    Trial testimony and evidence.

The following summary is derived from the SCAWV's opinion in *Gibbs III,* No. 20-0478, 2021 WL 4936636 (W. Va., Oct. 13, 2021) (slip opinion in ECF No. 27, Ex. 12):

In the early morning hours of January 9, 2015, multiple intruders entered the Oak Hill, West Virginia, home of Edward and Linda Knight ("the Knights").   2021 WL 4936636, *1.   Two of the intruders were armed; one with a shotgun and the other a pistol. Edward Knight ("Edward"), Linda Knight ("Linda"), and their three grandchildren — a five-year-old granddaughter, an eighteen-year-old disabled grandson, and 21-year-old Andrew Gunn ("Gunn") — were held at gun point.   The intruders located a safe in Gunn's room and tossed it out a bedroom window, along with a crossbow and two pairs of Jordan athletic shoes.   Then, they left the home and fled with the stolen items.   *Id.*

Linda immediately reported the incident to the Oak Hill police. Soon thereafter, the police received a tip that Kentrell Goodman (a friend of Gunn's who had spent significant time in the Knights' home) and Kevin Goodman were possibly involved in the home invasion. Determining that the Goodmans were now living in or near Newberry, South Carolina, officers from Oak Hill traveled to Newberry, and, with the help of Newberry police, further investigated the matter. *Id.*

Pursuant to a search warrant executed on January 14, 2015, the police searched the home in which Kentrell resided and discovered the stolen crossbow, shoes, and safe. The police took statements from Kentrell and Rashod Wicker, who also lived in the home. The men implicated themselves, as well as Kevin, Hill, and Petitioner in the Oak Hill home invasion. Kentrell told police that, after returning to South Carolina, the group went to Petitioner's house, where they gained entry to the safe by shooting it. *Id.*

At approximately 10:37 a.m. on January 15, 2015, police arrived at Petitioner's home, where he lived with his mother and brother. Officers surrounded the residence. Officer Garrett Lominack ("Lominack") of the Newberry County Sheriff's Office approached the door, and when Petitioner's mother answered the door, Lominack and other officers entered the home and arrested Petitioner. Thereafter, officers conducted a security sweep of the interior of the residence, observing, among other things, a silver handgun and shotgun shells. Meanwhile, at the rear of the residence, officers observed plastic pieces on the ground and two spent .410 gauge shotgun shell casings near the plastic pieces. While police were at the home, Petitioner's brother arrived and gave police permission to search his bedroom, where the silver handgun and some shotgun shells were located. *Id.* at *2.

15

Investigator Michael Stribble ("Stribble") of the Newberry County Sheriff's Office obtained a search warrant to search Petitioner's home at 11:41 a.m. on January 15, 2015. The search warrant was executed less than an hour later at 12:30 p.m.   During the search pursuant to the warrant, the Newberry police seized, among other things, Petitioner's cell phone, the silver handgun, the plastic pieces found at the rear of Petitioner's home, shotgun shells from multiple locations inside the home, and the spent shotgun shell casings found at the rear of the home.   The following day, Stribble obtained and executed an arrest warrant for Petitioner's arrest as a fugitive from justice.   The warrant stated, "Hold fig. max 20 days Gov. Ofc."   Petitioner was ultimately extradited to West Virginia on or about March 1, 2015.   *Id.* at *2.

In May of 2015, Petitioner was indicted by a grand jury in Fayette County, West Virginia, for the felony offenses of first-degree robbery, entry of a dwelling, grand larceny, and conspiracy.   Kevin and Hill were also indicted on these charges, and the three men were tried together in a three-day jury trial.   Prior to trial, each defendant filed a motion under Rule 14(b) of the West Virginia Rules of Criminal Procedure to sever his trial from that of his co-defendants but, following a hearing, those motions were denied by the circuit court.   Before the trial, Kentrell and Wicker pled guilty to first-degree robbery. At trial, the State presented numerous exhibits and the testimony of eleven witnesses, including the Knights, Gunn, several police officers, a toolmark examiner with the West Virginia State Police lab, Kentrell, and Wicker.   *Id.* at *2.

Kentrell testified that he had attended high school with Gunn in Oak Hill and that the two had been friends.   He explained that he knew Gunn kept a safe in his bedroom containing approximately $10,000.   Kentrell admitted that the group drove from South

16

Carolina to Oak Hill to forcibly take the money from Gunn.  He stated that they enlisted Wicker to drive the car because he had a driver's license.  He further testified that, upon arriving in Oak Hill, they parked near a Domino's restaurant and he, Kevin, Hill, and Petitioner proceeded to the Knights' home, ultimately taking Gunn's safe, a crossbow, and shoes.  *Id.* at *2.

Kentrell further testified that, when they returned to Newberry, the group proceeded to the rear of Petitioner's home where Kevin fired a shotgun at the safe at least twice to gain access to the money inside.  Kentrell acknowledged that he received a portion of the money from the safe.  He further admitted that he had entered a guilty plea to first-degree robbery in exchange for the dismissal of the remaining charges against him but stated he had not received any deals or promises in exchange for his testimony. He had not been sentenced when he testified.  *Id.* at *2.

Wicker testified that he was recruited to drive Kentrell, Kevin, Hill, and Petitioner from South Carolina to Oak Hill, West Virginia.  He claimed he remained with the vehicle near a Domino's restaurant while the other four men acquired the safe, crossbow, and shoes from the Knights' home.  He stated that, immediately upon returning to South Carolina, the group dropped him off at his mother's house before proceeding elsewhere. He further testified that the next time he saw the safe was the following day and, at that point, it had been opened, and he was given a portion of the money by Kentrell.  Like Kentrell, Wicker testified that he had entered a guilty plea to first-degree robbery in exchange for the dismissal of the remaining charges against him.  Wicker claimed that the plea was not conditioned on his agreement to testify against the other defendants. Wicker had not been sentenced when he gave his testimony.  *Id.* at *2.

17

Lominack testified about Petitioner's arrest, stating, "Once we entered the home, -- well, his mother answered the door, told us that [Petitioner] was on the couch.   He was on a couch in the living room area in the front of the trailer."   Another officer, Stephen Epps ("Epps") of the Newberry County Sheriff's Office admitted that they did not initially have an arrest warrant in hand when they came to Petitioner's house and arrested him. *Id.* at *3.   Regarding the search of petitioner's home, the following discussion took place during the State's questioning of Epps:

> Q. [the State's counsel, Brian Parsons]:   In your – in your search of [Petitioner's] residence, in your search of –
>
> MR. THOMPSON [Petitioner's trial counsel]: I'm going to object. There's been no foundation laid with regard to a search warrant. This other evidence has been on the outside of the house, as I understand it, and there's been no evidence of a search warrant.
>
> THE COURT:   Well, there's been some testimony that the man was inside the house looking around.   Whether he had a search warrant or had permission or what – I don't know what his authorization for being in there was, but there has already been testimony he was in the house looking around.   So, you know, --
>
> MR. THOMPSON: I can cover –
>
> THE COURT: And I don't know that I have jurisdiction over this county in South Carolina as to whether or not the search was authorized or not, so –
>
> MR. THOMPSON: I can cover it on cross.
>
> THE COURT: All right. Go ahead, Mr. Parsons.

*Id.* at *3.

The silver handgun, the plastic pieces and spent shell casings found at the rear of Petitioner's home, and the shotgun shells located inside Petitioner's home were all admitted into evidence during the trial.   The State also presented expert testimony

18

through the West Virginia State Police Lab's toolmark examiner establishing that at least some of the plastic pieces recovered from Petitioner's backyard were part of the stolen safe.  Through the testimony of Oak Hill Police Officer Mason Hines, the State also introduced into evidence Petitioner's cell phone and an extraction report of the cell phone indicating that, on the morning of the home invasion, Petitioner's cell phone "pinged" cell towers in Max Meadows, Virginia, Flat Top, West Virginia, and Oak Hill, West Virginia. *Id.* at *3.

Petitioner testified in his own defense at trial, denying any involvement in the crimes.   He claimed that his cell phone was missing on the date of the crimes and that he recovered the phone from Wicker on or about January 12, 2015.   Kevin and Hill also testified in their own defense, also denying involvement in the Oak Hill home invasion. Kevin also presented the testimony of his girlfriend as an alibi witness, who claimed that Kevin was with her in South Carolina at the time of the crimes.   At the conclusion of the evidence, the defendant made motions for a judgment of acquittal, which were denied. *Id.* at *3.   As noted by the SCAWV, in denying the motions, the trial court made the following findings:

> Well, the evidence from the State is the evidence from the State, and credibility issues of the defendants, who all testified in this matter, and their witnesses are all issues for the jury.   If the jury believes these three gentlemen that they were never here in West Virginia and didn't participate, then they get a free ride back to South Carolina.   However, there is evidence in this case that the jury may not believe their testimony and could find them guilty, depending upon what the jury believes, of the four charges set out in this indictment.   Those are credibility assessments that a jury must make.   Again, I agree that the evidence against Hill is weaker than the evidence against [Petitioner] and [Kevin].   That evidence, if believed by the jury, appears much stronger on those two individuals than Mr. Hill.   It appears that the evidence shows that Mr. Hill was just brought along, if the jury believes the testimony, as muscle in this thing, much like [Petitioner]

19

was brought along as muscle by [Kevin], who appears to be the prime perpetrator, based upon the testimony, if the jury believes it.   And I don't know whether they will or not, but that's up to them.

*Id.* at *3-4.

**B.    Testimony and evidence from omnibus hearing.**

In Petitioner's second round of habeas corpus proceedings in the circuit court, an omnibus evidentiary hearing was held on August 28, 2019.   As noted by the SCAWV, during the omnibus hearing, Petitioner argued an additional ground for relief that was not presented in his amended petition; that is, that the circuit court lacked personal jurisdiction over him based upon his allegedly unconstitutional extradition proceedings. Six witnesses, including Petitioner, testified at the omnibus hearing, the transcript of which is in ECF No. 27, Ex. 8.[2]   At the outset of the hearing, the court went over the checklist of grounds for relief in accordance with *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981), and Petitioner acknowledged that he was waiving any claim not presented in the hearing.   (ECF No. 27, Ex. 8 at 7-17).

Regarding Petitioner's arrest on January 15, 2015, Officer James Pack of the Oak Hill Police Department testified as follows when questioned by Respondent's counsel:

> Q.   So just to make sure I have this straight Detective; it is your understanding that the arrest warrant was issued here [in Fayette County, West Virginia,] then the Petitioner was placed in NCIC and based on that South Carolina made an arrest of him.   Is that your understanding?
>
> A.   Yes, sir.

---

2   The undersigned will cite to the pagination used in the CM/ECF header at the top of each page of the document (Page ____ of _____) which may differ from the actual document pagination.

(*Id.* at 33).    Pack further testified that, under orders of the Fayette County Prosecutor's Office, on March 1, 2015, he returned to South Carolina to transport Petitioner to West Virginia and he gave the paperwork given to him to staff at the jail where they picked him up.    (*Id.* at 33-35).

Regarding the entry and search of his home, Petitioner testified, "I was in the front room and my mother was at the door and my mother answered the door and they just came in and arrested me with drawn guns . . . ."    (*Id.* at 94).    He further stated, "When my mother opened the door, she didn't open it all the way.    She answered the door halfway and then they just walked in, and then they seen me because I was just getting off the couch when they opened the door."    (*Id.* at 104).    Petitioner's mother testified that the police officers entered her home and began searching it without a warrant or her consent; however, she acknowledged that a warrant was ultimately obtained and presented to her.    (*Id.* at 42-47, 110).    With respect to the search, Petitioner's appellate counsel testified:

> There was the issue of the absence of the search warrant. And I had mentioned to [Petitioner] that I thought that that was a habeas issue; because [Petitioner's trial counsel] had not had a suppression hearing, on the acts of the – on the fact that there hadn't been a search warrant. . . . I think that is one that I should have included in the direct appeal because it wasn't simply a question that [Petitioner's trial counsel] had not convened the hearing on the search warrant. There is more to it than that. . . . [I]t would now be a question of whether there was error by the trial court in addressing it or not properly addressing it and that would have made it an issue for direct appeal.    So, as far as that – yes, I should have included that on direct appeal, and I did not.

(*Id.* at 78-79).

Petitioner was also questioned by the circuit court concerning the events occurring after he was taken into police custody:

THE COURT:   [I]n January of 2015, when the police came to your home there, at any time thereafter, do you recall being arrested on a Fugitive from Justice Warrant?

WITNESS [Petitioner]:   I didn't get the Fugitive from Justice Warrant until I went to court to sign my extradition hearing and then my PO [probation officer] violated me for this crime and then they charged me with a fugitive from justice.

THE COURT: All right. And at any time after you were arrested on the Fugitive from Justice Warrant did you go before a Magistrate or JP or a Judge of any kind?

WITNESS: No, sir.

THE COURT: Did you sign any kind of document that -- consenting to come back to the State of West Virginia?

WITNESS: No, sir.

THE COURT: All right. Did you -- on the day that the officer came to South Carolina and brought you back to West Virginia, prior to him arriving, [were] you aware that he was coming that day?

WITNESS: No, sir.

(*Id.* at 107-08).   Petitioner further testified that he was held in South Carolina for about 45 days before he was transported to West Virginia.   (*Id.* at 97).   He claimed he was not provided with access to counsel during that time and that he signed a paper requesting an extradition hearing but that no such hearing was held.   (*Id.* at 97-98).   He denied signing any paper waiving his right to an extradition hearing.   (*Id.*)   Concerning his extradition, his habeas counsel told the circuit court:

> [I]n regard to my own research into this matter, I called down to Little Mountain Magistrate Court in South Carolina and I also called the circuit or their version of Circuit Court down there. In fact, I had them index their entire court record and there is nothing, no paperwork, nothing period that I can find. I even talked to the Magistrate, and I preface this by stating that I may be testifying here, but would be willing to. I talked to the Magistrate, Judge Johnson, and he informed me that they had never had an extradition

22

hearing and he more likely than not would have waived it, but we don't have the paperwork to prove that he waived it.

(*Id.* at 114-15).

Petitioner's trial counsel, Jack Thompson also testified at the omnibus hearing. He said that Petitioner had asked him to call his girlfriend, Jamie Chapman as an alibi witness who would have allegedly testified that she was with Petitioner at a gas station on the date they were supposedly in West Virginia.  However, Thompson said that he contacted Chapman and determined that the evidence suggested that the two were together the day before these crimes were committed and that Chapman did not appear to be a helpful or reliable witness, so he did not subpoena her.  (*Id.* at 56-57, 64).

Thompson further stated that, prior to seeing Petitioner's state habeas petition, he was unaware of any issues with Petitioner's arrest and extradition and "that would have shocked [him] at the time" and he "would have investigated further."  (*Id.* at 57). Thompson was also asked about Officer Hines' testimony concerning the cell phone data showing the movement of Petitioner's phone through Virginia and West Virginia on the date of the crimes.  Thompson remembered that Hines had testified but could not remember any specifics about his position on that issue.  (*Id.* at 60).  Thompson remembered making a motion to sever Petitioner's trial but did not remember anything about the hearing thereon.  (*Id.*)  Thompson stated that he was not distracted by the joint trial, that he conferred on issues with co-defendants' counsel, and that he had adequate time to investigate and prepare for trial.  (*Id.* at 60, 64-66).

After the omnibus hearing, Respondent sought to supplement the record with a series of documents, including a Waiver of Extradition signed by Petitioner, certifying

that he was brought before Magistrate Judge Gordon Johnson in Newberry County, South Carolina, on February 20, 2015, and waived the issuance and service of a Warrant of Extradition. *Gibbs III,* No. 20-0478, 2021 WL 4936636 at *6. (ECF No. 27, Ex. 12 at 8). Also included was a requisition request sent by the Governor of West Virginia to the Governor of South Carolina for the issuance of a Governor's Rendition Warrant and the return of petitioner to West Virginia. (*Id.*)

In his response to Respondent's request to supplement, Petitioner advised the circuit court that he did not waive his right to an extradition hearing and that "he specifically remembers signing a document to have his extradition hearing after being told that he needed to sign a paper for such a hearing to take place." (*Id.*) Petitioner disputed the authenticity of the Waiver of Extradition. The circuit court permitted Respondent to supplement the record with the documents, finding that they were not necessary to fully adjudicate Petitioner's claims, but were relevant to establishing Petitioner's credibility. (*Id.*)

## IV.   DISCUSSION

### A.   Illegal extradition claims are not cognizable in federal habeas.

In Grounds One and Four, and part of Ground Two of his § 2254 petition, Petitioner asserts that he was illegally extradited from South Carolina to West Virginia, in violation of West Virginia Code § 5-1-7, and, consequently, West Virginia allegedly did not have jurisdiction over him.[3]   (ECF No. 1 at 5, 7, and 10). However, as noted by

---

3   In Ground Four of the petition, Petitioner cites to 28 U.S.C. § 1332 (the statutory basis for federal subject matter jurisdiction in civil actions based upon diversity of citizenship. Petitioner appears to rely on this statute to assert that the state court lacked jurisdiction over his state criminal proceedings because it allegedly lacked "personal jurisdiction" over him due to the allegedly improper extradition process from South Carolina where he was living and was serving a term of youthful probation. This civil statute has no

Respondent, where "a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999). "It is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* (ECF No. 28 at 11-12).

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Here, Petitioner alleges that he was entitled to discharge from his confinement "as required by law 5-1-7." (ECF No. 1 at 5-6). He further alleges that South Carolina and West Virginia wrongfully "force[d] [him] across State line[s] while [he was] on probation [as a youthful offender in South Carolina]" and held him as a fugitive from justice in violation of the time frame set forth in West Virginia Code § 5-1-7. (*Id.* at 10). Thus, Respondent contends that these claims are not cognizable in federal habeas corpus because they are grounded exclusively in state law. (ECF No. 28 at 13).

Petitioner presented these claims for the first time in his second state habeas petition, the denial of which was affirmed by the SCAWV, who ruled that, pursuant to *State v. Flint*, 301 S.E.2d 765 (1983) and *State v. Moss*, 376 S.E.2d 569 (1988), "regardless of whether there are irregularities in the extradition of an individual from an asylum state to West Virginia, once the individual has been brought to West Virginia, extradition proceedings in the asylum state may not be challenged in West Virginia." *Gibbs III*, 2021 WL 4936636 at *9. That ruling reiterated longstanding state precedent that "the

bearing on Petitioner's criminal proceedings, and it has no implication in the current habeas corpus matter which is before this court pursuant to 28 U.S.C. § 2254.

propriety of the extradition proceedings which occurred in the asylum state . . . may be challenged only in the asylum state." *Id.* Moreover, the state courts' findings are consistent with clearly established federal law. As further noted by Respondent:

> Before a fugitive in custody is extradited to the demanding state, he may challenge the authority of the asylum state by seeking a federal writ of habeas corpus. Yet "once the prisoner has been returned to the demanding state, the writ of habeas corpus is no longer available to challenge his confinement upon grounds arising in the asylum state." *Gee v. State of Kansas*, 912 F.2d 414, 416 (10th Cir. 1990) (quoting *Frisbie v. Collins*, 342 U.S. 519, 522, (1952)) (internal citations omitted).

(ECF No. 28 at 12).

Furthermore, "[i]llegal extradition does not deprive the receiving state of jurisdiction, nor does it deprive a defendant of due process in the receiving state." *Strickland v. Wilson*, 399 F. App'x 391, 395 (10th Cir. 2010); *see also Lascelles v. Georgia*, 148 U.S. 537, 544 (1893) ("The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it."); *Hundley v. Thomas*, 719 F. App'x 250, 251-52 (4th Cir. 2018) (citing *Wirth*, 562 F.2d at 323 (holding that a person transported from an asylum state without a warrant does not have a claim for release in demanding state) and *Harden v. Pataki*, 320 F.3d 1289, 1299 (11th Cir. 2003) (violations of extradition procedures in no way relate to underlying guilt or innocence); *Remeta v. Singletary*, 85 F.3d 513, 518-19 (11th Cir. 1996) (asylum state's failure to provide pre-extradition hearing does not deprive receiving state of jurisdiction); *Eckert v. Tansy*, 936 F.2d 444, 450 (9th Cir. 1991) (defendant "cannot be granted habeas relief on the ground of illegal extradition"); *Shack v. Attorney General*, 776 F.2d 1170, 1172 (3d Cir. 1985) (defects in the extradition process do not justify collateral attack on conviction in receiving state); *Siegel v. Edwards*, 566 F.2d 958, 960 (5th Cir. 1978) (In

the case of extradition, "[o]nce a fugitive has been brought within custody of the demanding state, legality of extradition is no longer proper subject of any legal attack by him.").

Thus, a violation of state extradition law does not constitute a defense in a criminal case and, therefore, the jurisdiction of the trial court in the demanding state is not vitiated by an erroneous extradition. Accordingly, even if there were defects in his extradition process, as claimed by Petitioner, such defects did not deprive the State of West Virginia of jurisdiction over his Fayette County criminal proceedings and did not affect the validity of his conviction in any way.

Petitioner's convoluted "objections" to Respondent's motion largely reiterate his arguments about the alleged improprieties in the extradition process and paperwork and assert that the same violated his Fourteenth Amendment due process and other federal constitutional rights. (ECF Nos. 29 and 30, *passim*). Petitioner also appears to improperly assert, for the first time, an alleged *Brady* violation based upon the alleged withholding of the extradition paperwork.[4] His "objections" further appear to assert new claims grounded in the alleged ineffective assistance of his habeas counsel and errors by the circuit court in his habeas proceedings concerning the late admission into the habeas record of the extradition paperwork. These issues are not cognizable in federal habeas corpus. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Coleman v. Thompson*, 501 U.S. 722 (1991)

---

4  Not only was this new claim unexhausted in the state courts, but it is also frivolous, as the extradition paperwork is not potentially "exculpatory" evidence. *See, e.g., Harden v. Pataki*, 320 F.3d 1289, 1299 (11th Cir. 2003) (violations of extradition procedures in no way relate to underlying guilt or innocence).

(there is no constitutional right to counsel in habeas proceedings so claim of ineffective assistance of counsel therein is not cognizable in Federal habeas corpus); *Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988) (claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief).

As asserted by Respondent, Petitioner's claims in Grounds One, Two, and Four alleging that he was improperly extradited from South Carolina to West Virginia largely rest on the application of West Virginia statutory and case law and "do[] not offend the Constitution, laws, or treaties of the United States." (ECF No. 28 at 13). Therefore, the undersigned agrees that these claims are not cognizable in federal habeas corpus. (*Id.*)

Moreover, even to the extent that Petitioner has alleged that the alleged improprieties in his extradition to West Virginia violated his federal constitutional rights, he has not established that the state court rulings denying habeas corpus relief were contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable application of such law to the facts of this case. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner is not entitled to any relief under § 2254 on Grounds One and Four, and Ground Two, to the extent that it alleges claims grounded in his alleged improper extradition.

### B.    Evidentiary errors as alleged in Grounds One and Two.

Ground One of Petitioner's § 2254 petition, he also asserts that "illegal evidence was used in [his] trial to convict him." (ECF No. 1 at 5). He further appears to assert that the South Carolina and Oak Hill police found "illegal evidence" to corroborate co-defendants' Kentrell and Rashod's testimony "when there was no search warrant at all." (*Id.*) In Ground Two of his § 2254 petition, which is framed as "illegal evidence,"

28

Petitioner also asserts the following claims concerning the alleged admission of illegal evidence at his trial:  (1) allowing an "illegal cell phone" into evidence; (2) a Fourth Amendment violation stemming from a warrantless search; (3) "use [of] illegal [sic] obtain [sic] evidence to use co-defendant testimony;" (4) use of illegally obtained evidence to corroborate co-defendants' testimony; and (5) "Rule 710 [sic] use history cell phone data."  (ECF No. 1 at 7).   In a prior order, the undersigned re-framed these issues as follows: "Petitioner further asserts that he was improperly convicted of first-degree robbery, entry of a dwelling, and conspiracy based upon the admission of illegally obtained evidence used to corroborate the testimony of two co-defendants who had pled guilty before his trial . . . ."  (ECF No. 19 at 2).

Respondent contends that these claims, as pled, were not properly exhausted in the state courts and are procedurally defaulted.   Respondent further asserts that, even if these claims were exhausted, they are not cognizable in federal habeas corpus because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in his state court proceedings.  *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *see also United States v. Scarborough*, 777 F.2d 175, 183 (1985) (When a petitioner has a full and fair opportunity to litigate a fourth amendment claim, those arguments "may not be considered" on federal habeas review); *Picard v. Connor*, 404 U.S. 270, 276 (1971) (citations omitted); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011).  (ECF No. 28

at 13-15 & n.3).

As noted above and by Respondent, a federal habeas petitioner must first "fairly present" the substance of the claim or claims asserted in a § 2254 petition to the proper state courts. *Picard*, 404 U.S. at 275-78. The Fourth Circuit Court of Appeals has explained that the "fair presentment" requirement mandates that the petitioner present the state court with the "'substance' of his federal habeas corpus claim," including "both the operative facts and the 'controlling legal principles.'" *Matthews*, 105 F.3d at 911. Thus, the ground or grounds upon which a petitioner's claim relies must be presented "face-up and squarely" to the state courts, while "oblique references which hint that a theory may be lurking in the woodwork will not" suffice. *Id.*

As further noted by Respondent, Petitioner's direct appeal did not challenge the evidentiary rulings of the trial court or otherwise allege that he had been convicted using illegally obtained evidence. *See Gibbs I*, 797 S.E.2d at 626. (ECF No. 28 at 16). Additionally, in his first state habeas corpus petition, the denial of which he did not appeal, Petitioner only addressed the use of "illegal evidence" under the guise of ineffective assistance of counsel, alleging, in part, that his trial counsel failed to challenge the search and seizure or object to the admission of the evidence. Thus, his Fourth Amendment claim was not exhausted through those proceedings. (*Id.*)

In his second circuit court habeas petition, Petitioner alleged, for the first time, constitutional errors in evidentiary rulings concerning illegally obtained evidence, admission of "expert evidence" through a lay witness, and admission of evidence without establishing the chain of custody. However, Respondent asserts, he did not challenge the use of that "illegally obtained evidence" to corroborate the testimony of his co-

defendants, Kentrell Goodman and Rashod Wicker.    (*Id.*)    Respondent further asserts:

> Indeed, in its memorandum decision affirming the lower court's denial of Petitioner's second state habeas petition, the SCAWV pointed out that Goodman's and Wicker's testimony to Petitioner's involvement in the crime was corroborated by physical evidence not challenged by Petitioner. *Gibbs III*, 2021 WL 4936636, at *9-10.
>
> Therefore, Petitioner has not fairly presented the substance of his current evidentiary challenge to the state courts.    Such a failure to properly exhaust his state remedies would typically call for this Court to dismiss the petition without prejudice to afford Petitioner the opportunity to properly exhaust his claim; however, a dismissal without prejudice in this case would prove futile due to a procedural bar.

(*Id.*)    Respondent further contends that, Petitioner's failure to properly exhaust his claims in Ground Two has rendered them procedurally defaulted due to the adequate and independent state law ground derived from the SCAWV's decision in *Losh*, 277 S.E.2d 606 and West Virginia Code § 53-4A-1(c).    (ECF No. 28 at 16).    His memorandum further asserts:

> The *Losh* waiver is a firmly established principle of West Virginia jurisprudence and regularly followed by the courts in West Virginia.    *See McNemar*, 2017 WL 1102656, at *5.    Furthermore, this Court has already established that West Virginia Code § 53-4A-1(c) is an adequate and independent state procedural rule as applied to claims with similar procedural histories as the four Unexhausted Claims at issue here.    Section 53-4A-1(c) may therefore operate to procedurally bar Petitioner's Unexhausted Claims unless an exception to the procedural default doctrine applies.    *Boothe v. Ballard*, No. 2:14-cv-25165, 2016 WL 1275054, at *49 (S.D.W. Va., Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir. 2016).
>
> *    *    *
>
> Despite being afforded numerous opportunities to present whatever claims he so desired, Petitioner consistently failed to take advantage of those opportunities.    Petitioner's unexhausted claims in Ground Two are, thus, procedurally defaulted and should be dismissed with prejudice.

(*Id.* at 19).

Petitioner's objections are difficult to discern, but it appears that he is asserting that he did exhaust his Fourth Amendment and due process claims before the state courts which found that "Plaintiff will still have been found guilty even if the evidence[] was not used."  (ECF No. 29 at 4, 6).   That objection further generally asserts that the "illegally obtained evidence . . . impacted the fairness of [his] trial."  (*Id.* at 12).   His objections further appear to assert, for the first time in this § 2254 proceeding, that both his trial counsel, Jack Thompson, and his appellate counsel, Steve Mancini, provided ineffective assistance of counsel because they did not make Fourth Amendment objections at trial or raise such claims in his direct appeal.   (*Id.* at 7).[5]

In the appeal from his second state habeas, the SCAWV made the following findings:

> In his discussion of the second assignment of error, petitioner asserts that the police conducted an illegal search of his home, seizing evidence that was ultimately admitted at petitioner's trial.  He claims that the trial court should have applied the exclusionary rule to this evidence and excluded it from his trial.  He further argues that, despite the circuit court's finding to the contrary, no exceptions to the exclusionary rule, including the doctrine of inevitable discovery, applied to his case.  According to petitioner, "illegally obtained evidence was admitted over his trial counsel's objection at trial, and it was an abuse of discretion when the [circuit] court summarily denied him habeas relief on said substantive grounds."  He argues that for this Court "to leave the [circuit court's] decision undisturbed would ultimately subject the Petitioner to a violation of his constitutional right against  unreasonable searches and seizures, pursuant to the Fourth Amendment of the United States Constitution of the United States, and Article III, § of the Constitution of West Virginia." * * * Even if illegally seized evidence was admitted against him at trial, and even if the admission

---

5  Although Petitioner appears to be raising the ineffective assistance of his trial and appellate counsel with respect to the Fourth Amendment issues for the first time in his response (and not in the § 2254 petition itself), he did raise the Fourth Amendment claims in his second state habeas proceedings in the Circuit Court where he had his omnibus hearing and the appeal therefrom.  Accordingly, those claims appear to be fully exhausted.  Nonetheless, it does not appear that any ineffective assistance of counsel claims were raised in the habeas appeal.  Therefore, such claims are not fully exhausted and appear to now be procedurally barred.

of such evidence at his trial resulted in the deprivation of a constitutional right, we find that petitioner cannot prevail because, under the facts of this case, any such error was harmless beyond a reasonable doubt.

*Gibbs III*, 2021 WL 4936636 at *9.   (ECF No. 27, Ex. 12 at 12).

The SCAWV made further specific findings that the trial testimony of Kentrell and Wicker, which supported Petitioner's guilt, was consistent and corroborated by other unchallenged evidence than that seized from Petitioner's home.   *Id*. at *10.   (*Id*.)   The court further found that the jury had the ability to weigh the credibility of Petitioner's own testimony with that of his co-defendants.   (*Id*.)   Thus, the court found that, even absent the evidence challenged by Petitioner, there was sufficient evidence to convict him and the admission of such evidence was, at most, harmless error that would not support habeas relief.   (*Id*.)   That finding is consistent with well-settled Supreme Court authority.   *See Jackson v. Virginia*, 443 U.S. 307 (1979) (evidence is sufficient to support conviction where the evidence of record, taken in the light most favorable to the prosecution, established that a rational fact finder could have found petitioner guilty beyond a reasonable doubt.)

Based upon these findings, the undersigned finds that claims grounded in the seizure of illegal evidence, including whether that evidence was used to corroborate the testimony of Kentrell and Rashod, were fully and fairly litigated in Petitioner's second state court habeas corpus proceedings.   Therefore, those claims were fully exhausted through those proceedings and there is no basis to find procedural default thereof. However, given that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in his state proceedings, the undersigned further finds that those claims are barred from review by this court under the rationale and holding in *Stone v.*

33

*Powell.*

As noted by Respondent, in *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494; s*ee also Grimsley v. Dodson*, 696 F.2d 303, 305 (4th Cir. 1982) ("*Stone v. Powell* does not permit a federal habeas corpus court to reexamine under the Fourth Amendment revocation proceedings, and we hold that the exclusionary rule does not apply to those proceedings."); *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) (absent a showing that the "opportunity" to litigate Fourth Amendment claims has been impaired, the district court need not inquire further into the merits of those claims when applying *Stone* in a § 2254 proceeding); *Willett v. Lockhart*, 37 F.3d 1265, 1269 (8th Cir. 1994) ("By its very terms, *Stone* changed the federal habeas rules as they applied to alleged Fourth Amendment violations, requiring only that the petitioner have been afforded in the state courts 'an *opportunity* for full and fair litigation,' . . . not that this opportunity must produce either factual findings or legal conclusions that would survive ordinary federal habeas review."); *Graves v. Estelle*, 556 F.2d 743, 744 (5th Cir. 1977) (petitioner avoided dismissal for failure to exhaust, but Fourth Amendment search and seizure claims were barred by *Stone*, finding that state had provided an opportunity for full and fair litigation thereof).

Based upon a thorough review of the evidence of record in this matter, it appears that Petitioner did have the opportunity for a full and fair litigation of his Fourth Amendment search and seizure claims. Therefore, the undersigned proposes that the

presiding District Judge **FIND** that Petitioner's Fourth Amendment claims in Grounds One and Two are barred by the rationale in *Stone*.   Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner's Fourth Amendment claims in Grounds One and Two are not cognizable in this federal habeas corpus proceeding and must be dismissed.

However, the Supreme Court has not extended the reach of *Stone* beyond the Fourth Amendment context.   *See Withrow v. Williams*, 507 U.S. 680, 687 (1993) ("we have repeatedly declined to extend the rule in *Stone* beyond its original bounds.").   Thus, to the extent that Petitioner's claim in Ground Two also challenges the admission of Petitioner's cell phone data through the testimony of a lay witness, the undersigned separately addresses that issue.   Petitioner raised this claim for the first time in his second state habeas and it was addressed at his omnibus hearing, albeit briefly.   After finding that valid search warrants were issued to obtain Petitioner's cell phone data (ECF No. 27, Ex. 9 at 40), the circuit court expounded on state evidentiary law governing the admission of witness testimony concerning cell phone data, noting that the SCAWV had recently decided the case of *State v. Johnson*, 797 S.E.2d 557 (W. Va. 2017), on which Petitioner relies in support of his claim for habeas relief.   Petitioner repeats his assertions concerning the admission of this evidence in his first objection, but again relies primarily on state authority to assert that Officer Hines was not qualified to testify about the location of his cell phone.   (ECF No. 29 at 8).

In *Johnson*, the court held that "[a] witness must be qualified as an expert under Rule 702 of the West Virginia Rules of Civil Procedure in order to present evidence of cell phone historical cell site data."   *Id.* at 557, Syl. Pt. 2.   However, the circuit court

distinguished Petitioner's case from *Johnson*, finding that the information about which Office Hines testified at Petitioner's trial was "much more general" and "less technically complex" than that at issue in the *Johnson* case and, thus, was not the type of evidence requiring expert testimony under Rule 702.   (ECF No. 27, Ex. 9 at 43-44).   The court further found that Hines had sufficient training and qualifications to give his testimony. (*Id.* at 45).   Moreover, and most relevant here, the court found that the issue of the admission of Hines' testimony concerning the cell phone data was a matter of alleged trial court evidentiary error under state law that had no constitutional magnitude and, therefore, was not cognizable in habeas corpus.   (*Id.* at 45-47).   Alternatively, the circuit court further found that, notwithstanding Hines' testimony and the cell phone evidence, there was sufficient other evidence upon which the jury could have found Petitioner guilty and, thus, if there were any error in the admission of the cell phone evidence, it was harmless error.   (*Id.* at 47-49).

It appears that Petitioner abandoned this specific claim in his habeas appeal, choosing to focus exclusively on the alleged illegal search and seizure of the physical evidence from his home.   (ECF No. 27, Ex. 10).   In fact, he does not even mention this issue in his claim of cumulative error in his appellate brief, which the SCAWV found to be "skeletal" and "nothing more than a simple assertion that he was denied a fair trial."   (*Id.* at 36-38; Ex. 12 at 14).   Thus, Petitioner's claim concerning the cell phone evidence appears to be unexhausted and is now procedurally defaulted pursuant to W. Va. Code § 53-4A-1(c) and *Losh*.

For the reasons stated, the undersigned proposes that the presiding District Judge **FIND** that the claims for relief concerning the admission of "illegal evidence" as stated in

Grounds One and Two of Petitioner's § 2254 petition are either not cognizable in federal habeas corpus or are procedurally barred from review by this court.    Moreover, to the extent that those claims, as exhausted in the state courts, implicate Petitioner's due process right to a fair trial, he has not demonstrated that the state court decisions constitute an unreasonable application of clearly established federal law or resulted in an unreasonable application of the same to the facts of this case.

### C.    Petitioner's claims in Ground Three do not merit relief.

In Ground Three of his § 2254 petition, Petitioner alleges "Issues Raised As [to] Co-defendant Kevin Goodman jr [sic] [and] Radee Hill Ineffective of Counsel [sic]." (ECF No. 1 at 8).    Although quite difficult to discern, in a prior Order, the undersigned re-framed this issue as a claim that Petitioner "was further denied a fair trial because he was tried together with two other co-defendants."    (ECF No. 19 at 2).    Respondent states that "Petitioner's argument seems to be that he received a different result in this case than his co-defendants Goodman and Hill; therefore, he received an unfair trial."    (ECF No. 28 at 19).

In Ground Three of the § 2254 petition, Petitioner specifically asserts that he (1) "was not in the same majority as co-defendant Kevin goodman [sic] Jr;" (2) "was not in the same majority at trial as co-defendants Kevin goodman jr [sic] [and] Radee Hill;" and (3) "did not have a[n] oral argument like Kevin goodman jr [sic]."    (ECF No. 1 at 8).    Yet, he provides no further argument or support for these claims.    Petitioner also summarily asserts "Ineffective assistance of counsel" in this ground without any further explanation or support.    (*Id.*)

Respondent notes that Petitioner and his co-defendants "each received the same verdict - they were all convicted of first-degree robbery, entry of a dwelling, and conspiracy." *Gibbs I*, 797 S.E.2d at 629. Respondent further asserts that both Petitioner and Goodman's appeals were argued by their respective counsel before the SCAWV. *Id.* at 626. Thus, Respondent asserts that there is no dispute as to whether Petitioner and his co-defendants received the same result in their trial. (ECF No. 28 at 20).

Respondent's memorandum further asserts that there was no violation of state or federal law stemming from Petitioner's joint trial with his co-defendants. His memorandum further asserts:

> Inasmuch as the Court interprets Petitioner's argument to challenge his joint trial with his co-defendants, that joint trial was conducted pursuant to Rule 8(b) of the West Virginia Rules of Criminal Procedure, which allows a joint trial of co-defendants:  Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.  Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.  "If the joinder of defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the State, the Court may sever the defendants' trials, or provide whatever other relief that justice requires." W. Va. R. Crim. P. 14(b).  The West Virginia Rule is substantially the same as Rule 8(b) of the Federal Rules of Criminal Procedure and federal law favors joint trials where co-defendants' defenses are not mutually antagonistic or irreconcilable in order to promote judicial economy. *See Hernandez v. Commonwealth*, 234 F. Supp. 3d 316, 325 (D. Mass. 2017).

> Because the West Virginia Rule tracks the federal Rule and because the joinder of Petitioner's trial with that of his co-defendants is supported—even favored—by federal law, Petitioner is not entitled to relief on this ground.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529

U.S. at 412.    Here, though, Petitioner does not even argue that his joint trial with his co-defendants was contrary to or an unreasonable application of clearly established federal law.

(ECF No. 28 at 20-21).

Out of an abundance of caution, Respondent also addresses Petitioner's convoluted Ground Three as potentially renewing his argument before the state courts that he was "wrongfully deprived of peremptory challenges to the jury panel due to his joint trial with his co-defendants."  (*Id*. at 21).   Respondent contends that issue is not cognizable in federal habeas corpus, stating, that the United States Supreme Court has "long recognized" that "peremptory challenges are not of federal constitutional dimension." *Rivera v. Illinois*, 556 U.S. 148, 152 (2009) (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000)); *see also Georgia v. McCollum*, 505 U.S. 42, 57 (1992) ("States may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'").   Thus, Respondent asserts that Petitioner is not entitled to habeas corpus relief on this ground.

As noted previously and *infra*, Petitioner's objections, while primarily focused on issues related to his arrest and extradition, attempt to raise numerous additional arguments that were not asserted in his initial petition.   However, nothing in his objections directly touches on how he was "not in the same majority" as his co-defendants.   Thus, the undersigned cannot discern the true basis for this allegation.   Moreover, although Petitioner's objection does include two paragraphs that appear to address alleged ineffective assistance concerning his trial counsel's failure to call his alibi witness and his trial and appellate counsel's failure to raise the Fourth Amendment search and seizure issues (ECF No. 29 at 4, 7), those claims, although raised in Petitioner's second

circuit court habeas petition and addressed in his omnibus hearing, were abandoned in his habeas appeal.   Accordingly, the presiding District Judge should find that they are now procedurally defaulted and barred from review herein.

### D.    Claims newly raised in objections.

As previously noted, Petitioner's convoluted "objection" documents appear to raise additional claims that were not specifically addressed in his § 2254 petition, including arguments about a defective indictment, a racially biased jury, additional claims of ineffective assistance of his trial and appellate counsel, and an entirely new claim about alleged the failure of the state courts to consider photographic and video evidence showing the alleged vehicle in which the suspects allegedly traveled passing through a West Virginia Turnpike tollbooth (which was found by the state courts not to be newly discovered or exculpatory evidence).   (ECF No. 29 & 30).   While these matters may have been addressed in some fashion in the state courts, they were not raised as grounds of federal constitutional error for habeas corpus relief in Petitioner's § 2254 petition and cannot be considered now.

A petitioner may not assert new claims for relief in briefs.   "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. Sept. 11, 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).   Thus, this Court should decline to address these matters raised herein for the first time in Petitioner's responsive "objections."

**E.    No right to a federal habeas corpus hearing or appointment of counsel.**

Within his "objection" documents, Petitioner appears to request an evidentiary hearing in this federal court and the appointment of counsel to represent him, largely to again address his arrest and extradition claims.    (ECF No. 29 at 5, 11).    However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."    *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).    In *Cullen*, the Supreme Court further found:

> Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.*, at 437, 120 S. Ct. 1479; *see also Richter*, 562 U.S., at 103, 131 S. Ct., at 787 ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions"); *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing")

*Id.* at 186.    Moreover, the Supreme Court recently found that a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state court record based on ineffective assistance of state postconviction counsel.    *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022).    Thus, to the extent that Petitioner has asserted or may assert that his claims were not fully developed by his habeas counsel, Mr. Dove, there is still no proper basis for a federal evidentiary hearing or appointment of counsel.[6]

Because Petitioner was granted a full and fair opportunity to address all of his claims for relief in his omnibus hearing in state court, with the assistance of habeas

---

6    Petitioner has filed two motions for appointment of counsel (ECF Nos. 32 & 36), which will be addressed in a separate Order.

counsel, and because it appears that his present claims are either (1) not cognizable in federal habeas corpus; (2) procedurally barred from review in this court; or (3) do not implicate an unreasonable application of clearly established federal law, there is no basis for an evidentiary hearing or appointment of counsel in this federal habeas matter.

### F.    Petitioner's motion for injunctive relief.

On January 24, 2023, Petitioner filed a Motion for Injunctive Relief and Preliminary Injunction (ECF No. 37) and additional documentation in support thereof (ECF No 38).   Petitioner also filed the same motion in his companion § 1983 civil rights case, which the undersigned previously recommended be dismissed as being barred by the statute of limitations, and a third civil matter, assigned to other judicial officers, addressing Petitioner's conditions of confinement at the Mount Olive Correctional Complex, which is wholly unrelated to the instant habeas proceeding.   The motion will be separately addressed in those proceedings.

Plaintiff appears to request an "injunction" ordering his "extradition back to South Carolina for a hearing.   However, the undersigned has found that all his claims for habeas corpus relief herein have no merit.

To obtain a preliminary injunction, a movant must demonstrate that "(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest."   *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*").   As noted by the *Real Truth* Court:

A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). * * * Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

Petitioner has not clearly demonstrated a likelihood of success on the merits of the instant habeas petition or a likelihood that he will suffer irreparable harm without the requested injunctive relief. Consequently, he cannot establish the required factors for obtaining a preliminary injunction. Moreover, considering the findings herein that Petitioner is not entitled to any habeas corpus relief under § 2254, there is no basis for any form of permanent injunctive relief either. *See Griffin v. W. Va.,* No. 5:17-cv-03111, 2017 WL 6947868, at *12 (S.D.W. Va. Dec. 21, 2017), *report and recommendation adopted sub nom. Griffin v. W. Va. ex rel. Home Confinement Dep't of Greenbrier Cnty., W. Va.*, No. 5:17-cv-03111, 2018 WL 443461 (S.D.W. Va. Jan. 16, 2018) (denying motion for preliminary injunction where petitioner could not clearly show likelihood of success where it was recommended that petition be dismissed).

## V.    RECOMMENDATION

For the reasons stated herein, the undesigned proposes that the presiding District Judge **FIND** that, to the extent that Petitioner's claims in his § 2254 petition are exhausted and not procedurally barred, he has not demonstrated that the state court rulings concerning those claims are contrary to, or an unreasonable application of clearly established federal law, or an unreasonable application thereof to the facts of this case. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner is not entitled to any relief under 28 U.S.C. § 2254. Therefore, it is respectfully **RECOMMENDED** that Respondent's Motion to Dismiss and for Summary Judgment (ECF No. 27) be **GRANTED** and that this civil action be dismissed from the docket of the Court. Additionally, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Motion for Injunctive Relief and Preliminary Injunction (ECF No. 37).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

January 31, 2023

Dwane L. Tinsley
United States Magistrate Judge

45